UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MARTIN, SHUDT, WALLACE,
DILORENZO & JOHNSON,

      Plaintiff,

 -against-           1:13-CV-0498 (LEK/CFH)

THE TRAVELERS INDEMNITY
COMPANY OF CONNECTICUT,

      Defendant.
_____

## MEMORANDUM-DECISION and ORDER

**I. INTRODUCTION**

Plaintiff Martin, Shudt, Wallace, DiLorenzo & Johnson ("Plaintiff") brought this first-party insurance coverage action against The Travelers Indemnity Company of Connecticut ("Defendant"). Dkt. No. 1-1 ("Complaint"). Presently before the Court is Defendant's Motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 11 ("Motion"). For the following reasons, the Court grants the Motion.

**II. BACKGROUND**[1]

Plaintiff, a Troy, NY-based partnership, was insured by a policy issued by Defendant, a Connecticut-based insurance company. Compl. ¶ 5; Dkt. Nos. 11-3, -4 (the "Policy").[2] The

---

[1] Because this case is before the Court on a motion to dismiss for failure to state a claim, the allegations of the Complaint are accepted as true and form the basis of this section. See Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor").

[2] The Court may consider the Policy because the Complaint incorporates it by reference. See Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002); Compl. ¶¶ 4-5.

Policy's Businessowners Property Coverage Special Form provides that Defendant "will pay for direct physical loss of or damage to Covered Property," including money or securities, "caused by or resulting from a Covered Cause of Loss." Policy; Dkt. No. 11-11 ("Memorandum") at 2. Covered Causes of Loss include "risks of direct physical loss," but exclude "loss or damage caused by or resulting from . . . [v]oluntary parting with any property by you or anyone else to whom you have entrusted the property. Policy; Mem. at 2-3.

In June 2012, Plaintiff lost $95,000 (the "Loss"). Compl. ¶ 9. More specifically, someone tendered to Plaintiff what appeared to be a cashier's check for $95,000, payable to Plaintiff. Id. ¶ 14. Plaintiff believed that the check represented a payment of funds owed to one of Plaintiff's clients. Id. Plaintiff deposited the check into its client escrow account, and after the funds were made available by the depository bank, Plaintiff wired $94,470.00 to a third-party's bank account as instructed by the purported client. Id.

Plaintiff soon learned from its bank that the $95,000 check it had deposited was forged, and the bank charged Plaintiff's account $95,000. Id. Further investigation revealed that this transaction—the presentation of the check and the purported client's instructions to wire the funds to a third party—was an act of larceny. Id.

Plaintiff submitted a claim for the Loss to Defendant. Id. ¶ 11. On July 9, 2012, Defendant denied coverage, stating that Paragraph B.2.i. (the "Voluntary Parting Exclusion") of the Businessowners Property Coverage Special Form excluded from coverage any loss caused by or resulting from "[v]oluntary parting with any property" by Plaintiff. Id. ¶ 15; Dkt No. 1-1, Ex. A.

In March 2013, Plaintiff sued Defendant in New York State Supreme Court, Rensselaer County, alleging breach of contract and bad faith denial of its claim. Compl. ¶¶ 26-33. Defendant

2

removed the action to this Court on May 1, 2013. Dkt. No. 1. Plaintiff seeks a declaration that the Policy covers its Loss, a money judgment of $95,000, and attorney's fees. Compl. at 4-5. On July 9, 2013, Defendant filed its Motion to dismiss. Mot. Plaintiff filed a Response Memorandum, and Defendant filed a Reply. Dkt. Nos. 12-1 ("Response"); 13 ("Reply").

### III.   LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See id. at 678-79.

3

## IV. DISCUSSION

**A. Breach of Contract**

Defendant contends that the Policy's Voluntary Parting Exclusion precludes coverage for Plaintiff's Loss. Mem. at 5-10. Plaintiff responds that the Voluntary Parting Exclusion does not clearly exclude losses resulting from larceny by fraud or false pretense, and that the Policy can reasonably be interpreted to cover Plaintiff's Loss. Resp. at 4-11.

Under New York law, interpretation of a contract is a legal question for the court to decide. Int'l Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 83 (2d Cir. 2002) (citing K. Bell & Assocs. Inc. v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996)). "[A] written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed." Cruden v. Bank of N.Y., 957 F.2d 961, 976 (2d Cir. 1992). "Where . . . the contract is clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence." Rainbow v. Swisher, 527 N.E.2d 258, 258 (N.Y. 1988). "Contract language is ambiguous if it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" Am. Home Assur. Co. v. Hapag Lloyd Container Linie, GMBH, 446 F.3d 313, 316 (2d Cir. 2006) (quoting Lightfoot v. Union Carbide Corp., 110 F.3d 898, 906 (2d Cir. 1997)).

In an action seeking coverage for a loss under an insurance policy, the insured has the burden of proving that a valid policy was in existence on the relevant date and that a loss of property occurred, but the insurer has the burden of showing that a claim falls within a policy exclusion. Int'l

Paper Co. v. Cont'l Cas. Co., 320 N.E.2d 619 (N.Y. 1974). In addition, "[t]he ambiguities in an insurance policy are . . . to be construed against the insurer, particularly when found in an exclusionary clause." Ace Wire & Cable Co. v. Aetna Cas. & Sur. Co., 457 N.E.2d 761 (N.Y. 1983) (citation omitted). "To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." Cont'l Cas. Co. v. Rapid-Am. Corp., 609 N.E.2d 506, 512 (N.Y. 1993). Nevertheless, "[w]here the provisions of an insurance contract are clear and unambiguous, the courts should not strain to superimpose an unnatural or unreasonable construction." Maurice Goldman & Sons, Inc. v. Hanover Ins. Co., 607 N.E.2d 792, 793 (N.Y. 1992).

On its face, the Voluntary Parting Exclusion unambiguously encompasses Plaintiff's Loss. Plaintiff wired the funds at issue to another bank account, thereby voluntarily parting with the funds. That Plaintiff wired the money in reliance on misrepresentations or false pretenses does not alter the voluntariness of that parting. See, e.g., Morris James, LLP v. Cont'l Cas. Co., 928 F. Supp. 2d 816, 819, 823 (D. Del. 2013) (finding that where law firm transferred proceeds of forged check to third-party account on the instruction of purported client, the insured had "voluntarily part[ed]" with the funds despite being induced to do so by fraud);[3] PNS Jewelry, Inc. v. Penn-Am. Ins. Co., No. B212348, 2010 WL 685967, at *4 (Cal. Ct. App. Mar. 1, 2010) ("The word 'voluntary' applies to the insured's 'parting' with the property—i.e., when the insured purposely parts with the property

---

[3] Morris James nevertheless found that the policy covered the loss because an additional "Forgery and Alteration Endorsement" rendered the exclusion ambiguous. 928 F. Supp. 2d at 824-26. Here, Plaintiff does not rely on a specific forgery provision in arguing that the Loss is covered by the Policy. See generally Resp.

5

without force. . . . Although the owner was tricked into doing so. . . , the owner physically and purposely handed over the property . . . ."); LaPerla, Ltd. v. Peerless Ins. Co., 980 A.2d 971, 971-83 (Conn. Super. Ct. 2009) (holding that sale of jewelry to fraudster who presented bad check fell within exclusion for losses resulting from "[v]oluntary parting with any property by you or anyone entrusted with property if induced to do so by any fraudulent scheme, trick, device or false pretense"); see also Mem. at 6-7, 7 n.2 (collecting cases); cf. 3 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 19.7 (2d ed. 2013) ("[T]he crime of false pretenses requires that the defendant . . . obtain title to the victim's property. . . . Whether title to property delivered to the defendant passes to him usually depends upon whether the victim *intends* to transfer title to him . . . .").

Defendant has provided an extensive list of cases finding that a "voluntary parting" with property exclusion encompasses larcenies by false pretenses or fraud. Mem. at 6-7, 7 n.2. Plaintiff responds that these cases do not support Defendant's position because whereas the exclusions in those cases contained explicit references to losses induced by scheme, fraud, or trick, the Voluntary Parting Exclusion in the Policy lacks any such reference; absent such a direct reference, Plaintiff argues, the exclusionary language is ambiguous. Resp. at 8-9. In light of this alleged ambiguity, Plaintiff suggests that the Voluntary Parting Exclusion could reasonably be interpreted to encompass only gifts, loans, or bailments of property. Id. 6, 8.

Plaintiff's argument fails for two reasons. First, the Voluntary Parting Exclusion applies to *any* voluntary parting with property. Therefore, it is *broader* than exclusions with additional language limiting the exclusion to only voluntary partings induced by fraud, scheme, or trick. Second, Plaintiff's proffered alternative meaning is not reasonable. A reasonable insured would not expect the Policy to consider a gift, loan, or bailment a "covered cause of loss"—defined as "risks of

6

direct physical loss"—and therefore would not expect the Policy to contain an exclusion for gifts, loans, or bailments. See Gen. Motors Acceptance Corp. v. Nationwide Ins. Co., 828 N.E.2d 959, 962 (N.Y. 2005) ("[I]nsurance contracts [must] be interpreted according to the reasonable expectation and purpose of the ordinary businessman when making an ordinary business contract." (quotation marks omitted)). Because parting with property by gift, loan, or bailment does not constitute a covered loss, Plaintiff's interpretation would render the Voluntary Parting Exclusion superfluous.[4] See Bretton v. Mut. of Omaha Ins. Co., 492 N.Y.S.2d 760, 763 (App. Div. 1985) ("In interpreting insurance policies, every clause or word . . . is deemed to have some meaning. Furthermore, a policy's terms should not be assumed to be superfluous or to have been idly inserted." (internal citations, quotation marks, and alterations omitted)). The Court will not use the strained and unnatural reading offered by Plaintiff to create ambiguity where there is none. See Colson Servs. Corp. v. Ins. Co. of N. Am., 874 F. Supp. 65, 68 (S.D.N.Y. 1994).

Plaintiff also argues that the Policy must be interpreted consistent with Plaintiff's "reasonable expectation" that the Loss would be covered, stating that "the theft provisions of the Policy . . . clearly leave the ordinary insured with the expectation that thefts of all kinds are covered . . . ." Resp. at 5-6. Plaintiff asserts that the conduct that caused the Loss constitutes the crime of larceny under New York law and that, in light of the Policy's "theft provisions," a reasonable

---

[4] A reasonable insured would not expect the insurer to reimburse it for property that it simply loaned or bailed to another. But if such loaned or bailed property were stolen or damaged by the borrower or bailee, a reasonable insured could expect that loss to be covered. Nevertheless, such losses fall within other exclusions in the Policy encompassing "criminal acts by . . . anyone to whom you entrust the property," or defaults on any loan or similar transaction. Policy, Businessowners Property Special Coverage Form, ¶¶ B.2.h., j. Accordingly, to the extent Plaintiff argues that the Voluntary Parting Exclusion could reasonably be interpreted to encompass only loss or damage to gifted, loaned, or bailed property, that interpretation would also render the Voluntary Parting Exclusion superfluous.

7

insured would expect the Policy to cover all types of larceny. Id. at 4-5. But Plaintiff does not identify what specific provisions of the Policy it is referencing with the phrase "theft provisions." See id. at 4-6. Elsewhere in its Response, Plaintiff refers to a provision placing monetary limits on the coverage for theft of furs, jewelry, and molds, and cites to a provision excluding coverage of losses caused by theft in vacant buildings. Resp. at 5 & n.2. Neither of these provisions defines theft, and although they imply that theft can constitute a direct physical loss, the Voluntary Parting Exclusion nevertheless excludes losses caused by voluntary parting with property, regardless of whether those losses resulted from theft. Furthermore, the Court cannot find any specific provision of the Policy defining theft or larceny in a way that would render the Voluntary Parting Exclusion inapplicable to the Loss. Rather, the Policy defines "Covered Causes of Loss" as "RISKS OF DIRECT PHYSICAL LOSS unless the loss is . . . [e]xcluded . . . ." The Policy's language is unambiguous, and so Plaintiff's extrinsic discussion of theft and larceny is irrelevant to its interpretation.

Defendant has shown that the Voluntary Parting Exclusion is clear and unambiguous, is subject to only one reasonable interpretation, and applies to Plaintiff's Loss. Accordingly, Plaintiff's Complaint fails to state a claim for breach of contract.

**B. Remaining Claims**

Because the Court finds that Defendant properly disclaimed coverage for Plaintiff's Loss under the Policy, Plaintiff's claim that Defendant denied its claim in bad faith and is therefore liable for attorney's fees necessarily fails. See Liberty Surplus Ins. Corp. v. Segal Co., 420 F.3d 65, 70 (2d Cir. 2005) (citing Sukup v. State, 227 N.E.2d 842, 844 (N.Y. 1967)).

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion (Dkt. No. 11) to dismiss is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court close this case; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

DATED: February 05, 2014
Albany, New York

Lawrence E. Kahn
U.S. District Judge